IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STEPHANIE STARK,**                          Case 5:17 CV 2187

      Plaintiff,

      v.                          Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                          MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Stephanie Stark ("Plaintiff") filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 13). For the reasons stated below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB on February 7, 2011, alleging a disability onset date of September 20, 2007. (Tr. 163). Plaintiff applied for benefits due to polycystic ovarian syndrome, diabetes with insulin resistance, diabetic retinopathy, neuropathy, asthma, hypoxia, depression, hypercholesterolemia, carpal tunnel syndrome, sleep apnea, and restless leg syndrome. (Tr. 91). Her claim was denied initially (Tr. 91-104) and upon reconsideration (Tr. 106-19). Plaintiff requested a hearing before an administrative law judge ("ALJ") on March 7, 2012. (Tr. 129). On July 3, 2013, Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a

hearing before the ALJ, after which she found Plaintiff not disabled. (Tr. 11-31, 32-69). Plaintiff appealed the decision, but the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1). Plaintiff filed an action in the district court on March 12, 2015. *Stark v. Comm'r of Soc. Sec.*, Case No. 15cv477 (N.D. Ohio) (Doc. 1). In that action, she raised two claims: (1) the ALJ failed to properly evaluate the opinion of treating physician Dr. Perkowski; and (2) the ALJ failed to discuss why she did not credit Plaintiff's report of hand limitations. *See Stark v. Comm'r of Soc. Sec.*, Case No. 15cv477 (N.D. Ohio) (Doc. 15). The Court affirmed in part (finding no error in the ALJ's evaluation of Dr. Perkowski's opinion), and reversed in part (finding the ALJ did not properly explain her credibility determination regarding Plaintiff's hand limitations). *See Stark v. Comm'r of Soc. Sec.*, 2016 WL 1077100, at *5-8 (N.D. Ohio); (Tr. 880-95). Specifically, the Court explained:

> Plaintiff's second assignment of error attacks the ALJ's credibility determination, alleging the ALJ failed to adequately discuss why she did not credit Plaintiff's reports of hand limitations. (Doc. 19, at 19-21). Plaintiff argues she consistently reported and testified to limitations in her manipulative abilities and the ALJ dismissed her complaints without analysis of the relevant regulatory factors. This argument is well-taken.

> There is scant analysis of Plaintiff's alleged manipulative limitations in the ALJ's decision besides a summarization of her testimony. (Tr. 19). In fact, the ALJ does not discuss any medical evidence as relates to Plaintiff's hands throughout the rest of her opinion. While this is most likely due to the scarcity of medical evidence as relates to Plaintiff's hand complaints, it would be reasonable for the ALJ to mention this scarcity as a reason for finding Plaintiff's testimony incredible. *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

> Here, the ALJ did not discuss her lack of complaints to physicians, her lack of treatment, or her potentially inconsistent activities of daily living such as doing light housework, going to the store, or driving; all of which could underpin a proper credibility analysis. The ALJ did not clearly articulate why she believed Plaintiff's statements to be incredible and as such, failed to perform the requisite analysis. *See Ott v. Astrue*, 2010 WL 3087421, at *8 (E.D. Tenn).

2

There remains the possibility that harmless error may rescue the ALJ's credibility determination. *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012). "The harmless error analysis proceeds in two steps: 1) what was the ALJ's credibility finding, and 2) leaving the problematic reasoning aside, did the rest of the ALJ's reasons support that finding?" *New v. Colvin,* 2013 WL 4400522, at *6 (E.D. Ky). In this case, it is simply not possible to meet the second criterion because the ALJ failed to provide any reasons for discounting the Plaintiff's credibility. In light of the strong preference for well-explained credibility determinations, the Court cannot ignore the ALJ's complete lack of analysis as relates to Plaintiff's credibility. As such, remand is appropriate for the ALJ to properly discuss Plaintiff's credibility.

*Stark*, 2016 WL 1077100, at *7-8; Tr. 893-95.

On remand, rather than refer the matter for a new ALJ hearing, the Appeals Council issued a decision adopting the ALJ's prior decision, and offering additional analysis of Plaintiff's credibility. *See* Tr. 870-73. Plaintiff initially challenged this determination by bringing a motion to enforce judgment, arguing the Court's remand order required a new hearing before an ALJ. *See Stark v. Comm'r of Soc. Sec.*, Case No. 15cv477 (N.D. Ohio) (Doc. 25). The Court denied that motion, finding no error in the Commissioner's decision to address the remand through the Appeals Council, rather than through a new ALJ hearing. *See Stark v. Comm'r of Soc. Sec.*, Case No. 15cv477 (N.D. Ohio) (Doc. 27); *Stark v. Comm'r of Soc. Sec.*, 2017 WL 4475921 (N.D. Ohio).[1] The Court explained, "If Plaintiff wishes to challenge the Appeals Council's decision—now a new final decision of the Commissioner—her remedy is to file a new suit." *Stark v. Comm'r of Soc. Sec.*, Case No. 15cv477 (N.D. Ohio) (Doc. 27, at 7); *Stark*, 2017 WL 4475921, at *4. Following this determination, Plaintiff timely brought the instant case. (Doc. 1).

---

1. Therein, the Court found the relevant regulations, combined with the Court's original remand order, permitted this procedure. *See Stark v. Comm'r of Soc. Sec.*, Case No. 15cv477 (N.D. Ohio) (Doc. 27, at 4-5); *Stark v. Comm'r of Soc. Sec.*, 2017 WL 4475921, at *3-4 (N.D. Ohio).

Personal Background and Testimony

Born in June 1964, Plaintiff was 49 years old at the hearing before the ALJ. (Tr. 40). She lived in a house with four minor children – ages six, seven, eight, and seventeen. (Tr. 40-41). Plaintiff testified she drove frequently but only for short distances. (Tr. 41). She had an Associate's degree and past work as a respiratory therapist. (Tr. 42).

Plaintiff alleged she was unable to work due to her diabetes, asthma, sleep apnea, and neuropathy in her hands and feet. *Id.* She testified she was diagnosed with carpal tunnel syndrome approximately fifteen years before but it had "progressively gotten worse." (Tr. 43). She reported problems doing her hair, dropping items, and numbness, but stated she could complete forms, use a keyboard, and crochet or sew for short periods. (Tr. 43, 218). Plaintiff reported difficulty making dinner but stated she did the laundry and other light housework. (Tr. 46-47, 244-45, 464). Plaintiff reported shortness of breath and problems standing for long periods which inhibited her ability to perform household tasks. (Tr. 215, 244). She was capable of going to the store independently, managing money, socializing, and going to church. (Tr. 217-18, 246-47, 464).

After her gastric bypass surgery, Plaintiff stated she had frequent problems with vomiting and diarrhea which made controlling her blood sugars difficult. (Tr. 48-49). She also testified to issues with depression and anxiety that were not aided by medication. (Tr. 51). Plaintiff also utilized home oxygen at night, although she was not compliant at the time of the hearing. (Tr. 55-56).

---

2. The factual background in this case is duplicated in large part from the undersigned's prior summary of facts in Case Number 15cv477. *See Stark*, 2016 WL 1077100, at *1-4; Tr. 881-87. No additional factual information was developed on remand. *See* Tr. 870.

<u>Relevant Medical Evidence</u>

Plaintiff saw Dr. Suzanne Harold for diabetic control from 2007 through 2009. (Tr. 290-340). During this time, Plaintiff's blood sugar was mainly controlled (Tr. 291, 296, 303, 308); but there were periods of non-compliance (Tr. 293, 294). In spring 2009, Plaintiff had an insulin pump implanted to help control her blood sugar levels. (Tr. 304). At appointments with Dr. Harold, Plaintiff consistently complained of retinopathy and nephropathy but only occasionally of neuropathy. (Tr. 291, 293, 294, 296, 303, 308).

Ophthalmologist Richard Fuller diagnosed Plaintiff with non-proliferative diabetic retinopathy and macular edema in 2009 and 2010, respectively; but noted she had no visual limitations. (Tr. 343-44, 360). She received focal laser therapy on both eyes in 2010. (Tr. 360, 362).

An April 2010 chest x-ray revealed no lung consolidation or pleural effusion. (Tr. 422). On October 15, 2010, Plaintiff established care with Vincent Perkowski, D.O.; at the appointment, she denied any significant hypoglycemic episodes but was concerned about her feet swelling. (Tr. 401). A few months later, Plaintiff was admitted to the hospital with pneumonia and administered aerosol treatment. (Tr. 433-34). Upon discharge, her oxygen saturation had returned to normal and she was not restricted in any activities. (Tr. 436).

In January 2011, Plaintiff was admitted to the hospital with acute asthmatic bronchitis with hypoxia. (Tr. 380). Upon admission her oxygen saturation was low but this improved with the administration of nasal oxygen and nebulizer treatments. *Id.* The doctor opined her oxygen desaturation was likely connected to sleep apnea and her obesity. (Tr. 387). A chest x-ray taken at the visit showed low lung volumes, low respiratory effort, no congestion, and bibasilar atelectasis. (Tr. 391). It was also noted her diabetes was uncontrolled with her insulin pump. (Tr. 380). At

follow-ups the next week, Plaintiff's lungs were clear to auscultation without wheezes or rales. (Tr. 394, 399, 668). She reported no longer needing to use oxygen during the daytime but still required it at night. (Tr. 415).

On January 31, 2011, Plaintiff underwent a polysomnography to test for sleep apnea. (Tr. 437). She was diagnosed with moderate obstructive sleep apnea and it was recommended she utilize a CPAP machine. (Tr. 438). A second polysomnography test revealed her sleep improved with administration of CPAP. (Tr. 451).

In spring 2011, Plaintiff reported being 60% compliant with goals to use diet and exercise to lose weight but also reported stress eating and not exercising consistently. (Tr. 457). She reported swimming and being active with her children as her main forms of exercise. (Tr. 399, 508, 510). She also complained of depression due to family stressors although she stated she had a large support system. (Tr. 457-58). Plaintiff had been on various medications for depression and anxiety, with mixed success. (Tr. 293, 297, 512).

Plaintiff was diagnosed with pneumonia again in July 2011 and admitted to the hospital. (Tr. 489). A chest x-ray showed upper lobe consolidation likely due to pneumonia. (Tr. 489, 497, 499). Plaintiff's pulmonologist, Donald Decoy, M.D., reported Plaintiff was not using her inhaler and failed to get a refill on her prescription. (Tr. 670). Despite continued complaints of shortness of breath in November 2011, her chest was clear to auscultation and a pulmonary function test revealed only mild reduction in inspiratory flow. (Tr. 731, 736-37).

On December 22, 2011, Plaintiff had an endoscopy to address her gastroesophageal reflux disease ("GERD") in preparation for bariatric surgery. (Tr. 728). In March 2012, Plaintiff underwent bariatric surgery to assist in weight loss. (Tr. 696-98). In May 2012, she complained of nausea, vomiting, and difficulty swallowing from a gastrojejunal ulceration with stricture that

resulted from the bypass surgery; she had multiple endoscopies to remedy the issue. (Tr. 719, 721, 723, 805). That same month, Plaintiff reported improved shortness of breath, reduced daytime sleepiness, and not utilizing her CPAP machine due to her weight loss. (Tr. 738). By September she lost 83 pounds but her weight loss subsequently plateaued. (Tr. 677-80). However a month later, she still reported "feeling great" and having improved sleep, improved breathing, and no nausea or vomiting. (Tr. 741-42).

An April 2012 x-ray of Plaintiff's cervical spine taken after she complained of neck and back pain revealed mild degenerative changes but her vertebral disc heights were intact and she had no subluxation. (Tr. 798). A lumbar spine x-ray taken at the same time revealed only mild degenerative changes and no spondylolysis. (Tr. 798-99). These were Plaintiff's first complaints of joint or back pain. (Tr. 394-95, 401, 432, 581). She continued to complain of back pain that was treated with medication by Dr. Perkowski. (Tr. 553, 559).

Ahmad Alshoha, M.D., Plaintiff's endocrinologist, reported her diabetes was controlled with her insulin pump in August 2012. (Tr. 758). This was an improvement from prior visits which had shown variable blood sugar control. (Tr. 762-63, 766-67, 770, 773). On physical examination, she had clear lungs, no spinal pain, no leg edema, intact and symmetrical pulses, normal motor strength, and decreased sensation bilaterally in her feet; which was unchanged from other appointments. (Tr. 760, 764, 769, 772, 775-76). However, she repeatedly reported pain and swelling in her feet accompanied by neuropathy and diabetic ulcers. (Tr. 510, 527, 671, 788, 790, 794).

In April 2013, after her date last insured ("DLI"), Plaintiff's main complaints were neuropathy in her feet, numbness in her legs, and back pain which radiated into her legs. (Tr. 537).

An MRI of the lumbar spine obtained due to Plaintiff's complaints of back pain showed "mild degenerative changes" and "no focal dis[c] herniation or significant canal stenosis". (Tr. 850).

In May 2013, Plaintiff saw Gregory Hill, D.O., for problems in her hands and wrists. (Tr. 856). Plaintiff reported she had an EMG ten years prior and was told she had a pinched nerve. *Id.* She took Vicodin for pain. *Id.* On examination, Dr. Hill noted Plaintiff had tenderness to palpation, swelling, diminished sensation and grip strength, and positive Tinnel's and Phalen's signs. (Tr. 857). Dr. Hill diagnosed carpel tunnel syndrome, with a "significant exam" suggesting surgical intervention might be necessary. (Tr. 856). He instructed Plaintiff to undergo an electromyography/nerve conduction study ("EMG/NCS"). *Id.* In June 2013, Plaintiff underwent the EMG/NCS; the diagnosis was moderate to severe carpal tunnel in her right wrist and moderate carpal tunnel in her left wrist. (Tr. 853). At a return visit in July 2013, Plaintiff reported her pain was about the same, with "some numbness/tingling"; she had similar examination findings. (Tr. 854).

*Opinion Evidence*

On June 27, 2013, Dr. Perkowski opined Plaintiff could only occasionally lift five pounds and frequently lift two pounds due to "nerve damage from neuropathy and carpal tunnel". (Tr. 851). She was also restricted to standing, walking, or sitting for up to one hour without interruption and two to three hours total due to diabetic neuropathy and arthritis in her tailbone. *Id.* Dr. Perkowski believed she would need to be able to alternate postural positions at will and elevate her legs to 90 degrees. (Tr. 852). Despite these restrictions, Dr. Perkowski reported he did not prescribe a cane, walker, or wheelchair. *Id.* He opined Plaintiff should rarely climb, balance, stoop, crouch, kneel, crawl, or perform fine manipulation. (Tr. 851-52). He concluded Plaintiff's carpal tunnel syndrome restricted her to only occasional reaching, pushing/pulling, and gross

manipulation. (Tr. 852). Dr. Perkowski further restricted Plaintiff from heights, moving machinery, temperature extremes, and pulmonary irritants. *Id*. He reported Plaintiff's conditions caused moderate pain which interfered with her ability to concentrate, took her off task, caused absenteeism, and would require additional 30-60 minute breaks. *Id*.

*State Agency Reviewers*

On initial review, Jerry McCloud, M.D., opined that as a result of her obesity and asthma, Plaintiff could only occasionally lift twenty pounds; frequently lift ten pounds; stand, sit, or walk for six hours in an eight-hour day; and had an unlimited ability to push and pull. (Tr. 100). She was further restricted to frequently climbing ramps/stairs, stooping, kneeling, crouching, or crawling; had no manipulative, visual, or communicative limitations; but should avoid even moderate exposure to fumes, odors, dusts, or gases; and avoid all hazards. (Tr. 100-01). On reconsideration, Steve McKee, M.D., concurred with Dr. McCloud's limitations. (Tr. 115-16).

ALJ Decision

In September 2013, the ALJ found Plaintiff had the severe impairments of obesity (reduced by bariatric surgery), diabetic neuropathy, Type II diabetes, history of retinopathy status post laser therapy, and mild degenerative disc disease; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 16-18). The ALJ then found Plaintiff had the RFC to perform light work with the following limitations:

> [She] can occasionally lift and/or carry (including upward pulling) twenty pounds; frequently lift and/or carry (including upward pulling) ten pounds; stand and/or walk (with normal breaks) for about four hours in an eight-hour workday due to neuropathy; sit (with normal breaks) for about six hours in an eight-hour workday; push and/or pull (including operation of hand/foot controls); frequent foot controls bilaterally due to neuropathy; frequently climb ramps/stairs, stoop, kneel, crouch or crawl; unlimited balancing; never climb ladders, ropes, or scaffolds; should avoid moderate concentrated exposure to fumes, odors, dusts, gases, poor ventilation; avoid all exposure

to hazards, machinery and unprotected heights; and no manipulative, visual, or communicative limitations.

(Tr. 18). Based on the VE testimony, the ALJ found Plaintiff could perform representative work as an information clerk, order clerk, and ticket checker; and thus, was not disabled. (Tr. 24).

Appeals Council Decision

After the district court remand, the Appeals Council issued a written decision on September 9, 2017. (Tr. 870-73). The Appeals Council adopted the ALJ's prior decision regarding Plaintiff's status as not disabled, but "provid[ed] additional rationale that supports [the] ALJ['s] . . . evaluation of [Plaintiff's] symptoms." (Tr. 170). Specifically, the Appeals Council decision explained:

> In her decision dated September 23, 2013, [the] ALJ . . . found that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not supported. However, [the] ALJ . . . did not provide specific reasons in support of that conclusion. The decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms (see Social Security Ruling 16-3p[3]).

> The Appeals Council considered the claimant's statements concerning her alleged symptoms. However, the record contains limited objective medical evidence to support the claimant's statements regarding her hand limitations. For example, treatment records do not document motor or sensory deficits in the upper extremities or neuropathy in the hands (Exhibits 7F and 8F). Although she sought treatment for neuropathy in her feet, she made no complaints to physicians regarding her alleged hand neuropathy or alleged hand limitations (Exhibits 18F; 24F). In addition to her lack of complaints and treatment, her statements are inconsistent with her activities of daily living. In November 2011, she was able to complete a hand-written function report, in which she indicated she was able to drive, shop for groceries and clothes, prepare dinner, and complete light housework such as folding laundry and sweeping (Exhibit 9E).

---

3. Between the date of the original ALJ decision in this case (September 13, 2013), and the date of the Appeals Council decision on remand (September 9, 2017), the Social Security Administration modified the Social Security Ruling applicable to "credibility" or "subjective symptom" determinations. *See* SSR 16-3p, 2017 WL 5180304. The Appeals Council properly applied the ruling in place at the time of its decision.

Accordingly, the Appeals Council finds that the claimant's statements regarding her symptoms regarding her hands are inconsistent with the record. The Appeals Council adopts the Administrative Law Judge's other findings and conclusions.

(Tr. 871).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). When reviewing the ALJ's decision for substantial evidence, this court "may look to any evidence in the record, regardless of whether it has been cited" by the ALJ. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the Appeals Council erred in evaluating her subjective symptom reports and in the evaluation of Dr. Perkowski's opinion. The Commissioner responds that: 1) the Appeals Council's determination is supported by substantial evidence, and 2) Plaintiff's treating physician

argument is barred by *res judicata*. For the reasons discussed below, the undersigned affirms the decision of the Commissioner.

Credibility / Subjective Symptom Reports[4]

A claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters* 127 F.3d at 531 (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's subjective symptom assertions and resulting limitations are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citing, *inter alia*, 20 C.F.R. § 404.1529(a)). In determining whether a claimant has disabling symptoms, the regulations require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any

---

4. Social Security Regulations previously used the term "credibility" for evaluating a Plaintiff's subjective report of symptoms. *See* SSR 96-7p, 1996 WL 374186. In March 2016, the Social Security Administration issued new Social Security Ruling 16-3p, which eliminated "'the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p, 2016 WL 1119029, at *1). Both SSR 96-7p and SSR 16-3p direct the ALJ to evaluate an individual's subjective report of symptoms with the factors listed in 20 C.F.R. § 404.1529. SSR 16-3p, 2017 WL 5180304, at *7; 1996 WL 374186, at *2. Thus, while the term "credibility" was eliminated, prior case law is still applicable as both regulations refer to the two-step process in 20 C.F.R. § 404.1529. *See Pettigrew v. Berryhill*, 2018 WL 3104229, at *14 n.14 (N.D. Ohio) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96–7p has been invalidated by SSR 16–3p."), *report and recommendation adopted by* 2018 WL 3093696.

medication; 5) treatment, other than medication, to relieve pain, 6) any measures used to relieve pain, and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *7 ("[i]n addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3)"). Although the ALJ must "consider" the listed factors, there is no requirement that the ALJ discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Commissioner's credibility assessment "must be accorded great weight and deference." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 8001 (6th Cir. 2004) (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the Commissioner's determination is supported by substantial evidence, it must stand. *Id*. A credibility determination will not be disturbed "absent compelling reason", *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such findings are "virtually unchallengeable", *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation omitted). However, the credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

Here, the Appeals Council cited SSR 16-3p, and explained its requirements. (Tr. 871). The decision then elaborated on the decision to discount Plaintiff's subjective claims:

However, the record contains limited objective medical evidence to support the claimant's statements regarding her hand limitations. For example, treatment records do not document motor or sensory deficits in the upper extremities or neuropathy in the hands (Exhibits 7F and 8F). Although she sought treatment for neuropathy in her feet, she made no complaints to physicians regarding her alleged hand neuropathy or alleged hand limitations (Exhibits 18F; 24F). In addition to her lack of complaints and treatment, her statements are inconsistent with her activities of daily living. In November 2011, she was able to complete a hand-written function report, in which she indicated she was able to drive, shop for groceries and clothes, prepare dinner, and complete light housework such as folding laundry and sweeping (Exhibit 9E).

Accordingly, the Appeals Council finds that the claimant's statements regarding her symptoms regarding her hands are inconsistent with the record.

*Id.*

The undersigned finds the Appeals Council decision satisfied the purpose of the remand order, and its determination regarding Plaintiff's credibility is supported by substantial evidence.

First, the Appeals Council cited a lack of treatment records to support Plaintiff's allegations of hand-related limitations. *See id.* Plaintiff contends this is unsupported because the Appeals Council did not mention Dr. Hill's positive examination findings and positive EMG evidence. (Doc. 15, at 14-15) (citing Tr. 853). But, as the Commissioner correctly points out, both of these records post-date Plaintiff's date last insured by over five months. Eligibility for DIB must be established prior to the date last insured, here, December 31, 2012. *See Moon v. Sullivan*, 923 F.2d 1175, 1180 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status."). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004). To be relevant to the disability decision, "[p]ost-expiration evidence must relate back to the claimant's condition prior to the expiration of her [or his] date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir.2003) (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205–06 (6th

Cir.1990)). "The related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date." *May v. Astrue,* 2011 WL 3490186, at *5 (N.D. Ohio). Plaintiff points to no further evidence in the record supporting hand limitations beyond her own testimony at the July 2013 hearing and a March 2011 function report in which she stated she had numbness in her hands and could not crochet for long time periods due to carpal tunnel. *See* Doc. 15, at 15-20. Moreover, as the Sixth Circuit has recognized, even if the records indicate Plaintiff had this condition prior to her DLI, the "mere existence of those impairments . . . does not establish that [she] was significantly limited from performing basic work activities for a continuous period of time." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007). As discussed below, there were no other records suggesting this condition was disabling pre-DLI.

Second, the Appeals Council noted Plaintiff sought treatment for neuropathy in her feet, but "made no complaints to physicians regarding her alleged hand neuropathy or alleged hand limitations." (Tr. 871) (citing Tr. 410-19; Tr. 420-38). This is supported by the records cited, and by other evidence in the record. As the undersigned originally noted in discussing Dr. Perkowski's opinion:

> While the June 2013 study did establish carpal tunnel syndrome, the objective evidence in the record before the DLI does not. At multiple points her physicians noted no motor or sensory deficits in her upper extremities, no neuropathy in her hands, and did not list hand pain as a complaint; a clear indication her hands were asymptomatic. (*See* Tr. 418, 434, 537, 549, 575, 753-76).

*Stark*, 2016 WL 1077100, at *6.

Treatment notes indicate complaints about other problems, including foot neuropathy, but none regarding hand symptoms. *See* Tr. 418 (January 2011 – "No focal, motor or sensory deficits to the upper or lower extremities"); Tr. 434 (December 2010 – "Sensation to light touch is intact.

There is 5/5 strength in the upper and lower extremities."); Tr. 753-56 (January 2013 – noting

decreased sensation in Plaintiff's feet, but no hand complaints). Specifically, Plaintiff's treating

physician, Dr. Perkowski, did not discuss any hand complaints in his treatment records. *See* Tr.

537 (April 2013 – reporting "neuropathy is bad in her feet" and listing "back pain" and "foot pain"

but no hand symptoms in medical history); Tr. 549 (November 2012 – reporting lower back pain,

and listing "back pain" and "foot pain" but no hand symptoms in medical history); Tr. 575 (April

2012 – reporting mid back pain for about one year). These records contradict Plaintiff's testimony

at the hearing that for the three years prior, she had hand problems that caused her difficulty

holding her phone, difficulty holding her hands up to do her hair, and resulted in her dropping

things. (Tr. 43). Lack of treatment is a legitimate reason on which the Commissioner may rely to

discount credibility. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013)

(minimal or lack of treatment is valid reason to discount severity); *Despins*, 257 F. App'x at 931

("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not

indicate that [claimant] received significant treatment . . . during the relevant time period."); *see

also Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had [the claimant]

suffered from severe pain associated with her back condition, the medical records would have

revealed severe back or leg abnormalities, abnormal functioning on physical exams,

recommendations for more aggressive treatment, and more significant doctor-recommended

functional limitations."); SSR 16-3p, 2017 WL 5180304, at *8 ("[I]f the frequency or extent of the

treatment sought by an individual is not comparable with the degree of the individual's subjective

complaints . . . we may find the alleged intensity and persistence of an individual's symptoms

inconsistent with the overall evidence of record."); 20 C.F.R. § 404.1529(c)(3) (in assessing

subjective symptoms, the adjudicator must consider, among other factors, "[t]he type, dosage,

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"). Plaintiff attempts to justify the lack of treatment and complaints related to her hand limitations by asserting that "during the insured period, there is no doubt that Plaintiff was complaining about a host of other seemingly more pressing medical issues." (Doc. 15, at 19). This may be true, but it remains Plaintiff's burden to establish disability within the relevant time period. *See Moon,* 923 F.2d at 1180; *Walters,* 127 F.3d at 529. The Appeals Council did not err in relying on a lack of treatment records to discount Plaintiff's allegations of disabling hand limitations.

Third, the Appeals Council noted Plaintiff's allegations of hand limitations were "inconsistent with her activities of daily living". (Tr. 871). Therein, it specifically cited the fact that Plaintiff was able to complete a handwritten function report, in which she stated she could drive, shop, prepare dinner, and complete light housework. *Id.* Again, this is supported by the record. *See* Tr. 243-55 (twelve page function report completed by hand); Tr. 244 (listing daily activities as including "light housework", "prep for dinner", and running "light errands" once per week); Tr. 245 (noting ability to make some prepared/frozen meals, some homemade, and eating with parents frequently; ability to fold laundry, put it away, perform light grocery shopping, and sweep once or twice per week for two hours daily); Tr. 247 (listing hobbies and interests as, *inter alia*, television, crafting, computer, visiting with friends and family, taking kids to the park). Daily activities are a factor to be considered in assessing a claimant's subjective symptom reports. *See* SSR 16-3p, 2017 WL 5180304, at *8 (in assessing subjective symptoms, the adjudicator must consider, among other factors, "[d]aily activities"); 20 C.F.R. § 404.1529(c)(3) (same); *see also Walters,* 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Although Plaintiff contends the Appeals Council misconstrued her report of activities to find her less limited than she was, the undersigned finds no error in the consideration of these reported daily activities. The Appeals Council did not equate these activities alone with the ability to perform full-time work, but rather considered them as one factor in evaluating Plaintiff's subjective complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("[T]he ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible.").

The Appeals Council reasonably considered the factors under 20 C.F.R. § 404.1529(c)(3) in determining that Plaintiff's subjective hand symptoms were not as severe as she alleged prior to her DLI. The Court therefore finds no "compelling reason" to disturb the Commissioner's determination. *See Smith*, 307 F.3d at 379. Although Plaintiff can point to contrary evidence in the record to support a different conclusion, as noted above, even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the [Commissioner]." *Jones*, 336 F.3d at 477.

Treating Physician

Plaintiff also attempts to re-raise the treating physician argument she raised in her first district court appeal. *See* Doc. 15, at 22-25. The Commissioner responds that this argument is precluded by collateral estoppel, and even if properly raised, must fail for the same reasons the Court previously found. (Doc. 16, at 13-15). The Court agrees with the Commissioner.

In considering Plaintiff's first appeal, the Court affirmed the decision of the Commissioner (then made by the ALJ) to assign no weight to Dr. Perkowski's opinion and remanded only on the

issue of credibility. *See Stark*, 2016 WL 1077100, at *5-7. On remand, the Appeals Council adopted the portion of the ALJ's prior decision addressing Dr. Perkowski's opinion. *See* Tr. 870 ("The Appeals Council agrees with the ALJ ['s] . .. findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation . . . [h]owever, the Appeals Council provides additional rationale that supports [the] ALJ['s] . . . evaluation of the claimant's symptoms.").

The Sixth Circuit has explained are four requirements for collateral estoppel to apply:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have *resulted in a final judgment on the merits;* and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.,* 701 F.3d 1093, 1098 (6th Cir. 2012) (footnote omitted) (emphasis in original). Here, the "precise issue" of the Commissioner's treatment of Dr. Perkowski's opinion was raised in the prior proceedings. The Court specifically held that this determination was supported by substantial evidence and affirmed that decision on the merits. *See Stark*, 2016 WL 1077100, at *7 ("As such, the decision to give no weight to Dr. Perkowski's opinion is supported by substantial evidence."); *id.* at *8 ("Following review of the arguments presented, the record, and the applicable law, the Commissioner's decision is *affirmed in part* and reversed and remanded in part.") (emphasis added). Plaintiff had a full and fair opportunity to litigate that issue. Nothing in the Appeals Council's subsequent determination modified the Commissioner's treatment of Dr. Perkowski's opinion. As such, the undersigned agrees with the Commissioner that Plaintiff's argument regarding Dr. Perkowski is barred by collateral estoppel.

Moreover, even were the issue not barred by collateral estoppel, the Court would reach the same conclusion it did previously, for the same reasons. *See Stark*, 2016 WL 1077100, at 5-7.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

 s/James R. Knepp II
United States Magistrate Judge